BRYAN SCHRODER
United States Attorney

JAMES KLUGMAN
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: james.klugman@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>   vs.<br><br>THOMAS DAVID WHOLECHEESE,<br><br>        Defendant. | No. 4:16-cr-00008-RRB |

**RESPONSE IN OPPOSITION TO "MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)"**

     Thomas Wholecheese is a career criminal who is serving a sentence for illegally possessing a short-barreled shotgun. He asks this court to place him in home confinement under the compassionate release statute. There are several reasons why the motion should be denied. Most importantly by far, Wholecheese was diagnosed with COVID-19 in late April. Moreover, Wholecheese has failed to satisfy the procedural requirements that must be met for such a motion. Additionally, he has not shown that he can be safely released.

And his requested relief is beyond the court's power to grant in any case. Accordingly, the motion should be denied.

**FACTS**

In 2015, Wholecheese's girlfriend contacted the Alaska State Troopers and told them that Wholecheese was distributing methamphetamine and had threatened to kill himself with a shotgun. ECF No. 47 at 8. Troopers seized a shotgun with a 14.5 inch barrel and an obliterated serial number from Wholecheese's truck. Wholecheese's girlfriend later provided troopers with a bag taken from the vehicle that contained methamphetamine, a digital scale, and a pipe. *Id*. at 10-11.

Because Wholecheese had three prior felony convictions, he was prohibited from possessing this shotgun. 18 U.S.C. § 922(g)(1). A jury found him guilty of this crime, and the court sentenced him to 84 months in prison. ECF No. 56. Wholecheese has not requested compassionate release through the Bureau of Prisons. He was diagnosed with COVID-19 on April 26, 2020.

**ARGUMENT**

**1. Wholecheese has already contracted COVID-19**

The sole justification that Wholecheese offers in support of his motion is that he is at an unacceptable risk of serious harm should he contract COVID-19. But Wholecheese's medical records indicate that he was already contracted COVID-19 over a month ago. Under the circumstances, there is simply no longer any medical justification for Wholecheese's request. Even if the matter were properly before the court, denying the motion would be appropriate. See *United States v. Russo*, 2020 WL 1862294 at \*8

(S.D.N.Y. Apr. 14, 2020) ("As the circumstances are now, releasing Mr. Russo from the MCC will not provide him with the protection sought by his motion: relief from the risk of contracting COVID-19.")

**2. Wholecheese has not met the procedural requirements**

District courts generally have no discretion to modify a sentence after it has been imposed, unless Congress has expressly authorized them to do so. 18 U.S.C. § 3182(c). As relevant here, the compassionate release statute currently allows a sentence reduction at a defendant's request. But the court can only act after the Bureau of Prisons has either denied a request to make the motion on the defendant's behalf, or after it has failed to act for 30 days. 18 U.S.C. § 3182(c)(1)(A).

Wholecheese does not dispute that the statute expressly requires a request to BOP before the court can act. And he does not seem to dispute that he has failed to make one. Instead, Wholecheese argues the court should ignore the statutory requirements because they are poor policy and could lead to results that he considers unfair.

Wholecheese spends a great deal of effort attempting to demonstrate that the statute's exhaustion requirement is a claim-processing rule and not a jurisdictional bar. This characterization is dubious. See *United States v. Spears*, 824 F.3d 908, 916 (9th Cir. 2016) (requirements of § 3182(c)(2) jurisdictional); accord *United States v. Spaulding*, 802 F.3d 1110, 1124 (10th Cir. 2015); *United States v. Garcia*, 606 F.3d 209 at n.5 (5th Cir. 2010); *United States v. Williams*, 607 F.3d 1123, 1125-1126 (6th Cir. 2010). But it is also irrelevant in the circumstances of this case. Federal courts are independently required to

enforce limits on their jurisdiction, while even a facially inflexible claim-processing rule "can nonetheless be forfeited if the party asserting the rule waits too long to raise the point." *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004). But on the other hand, "calling a rule non-jurisdictional does not mean that it is not mandatory or that a timely objection can be ignored." *Gonzalez v. Thaler*, 556 U.S. 134, 146 (2012). Here, the government *is* raising the procedural objection in its first responsive pleading: there is no question of forfeiture or waiver.

The issue, then, is whether Wholecheese can simply avoid the statute's express requirements because he feels they are too onerous. And the Supreme Court has made it clear that he cannot. The exhaustion requirement in § 3182(c)(1)(A) was enacted by Congress, which did not see fit to authorize any exceptions for undue burdens or the like. When "Congress sets the rules … courts have a role in creating exceptions only if Congress wants them to"—and so when Congress has not authorized an exception based on unusual circumstances, "that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." *Ross v. Blake*, 578 U.S. ---, 136 S. Ct. 1850, 1856 (2016). The statutory requirement here could not be clearer, and Wholecheese must adhere to it. See also *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) ("Where Congress specifically mandates, exhaustion is required").

Wholecheese claims that "numerous district courts" have nevertheless decided not to apply the statute, ECF No. 38 at 10, but he cites only one: *United States v. Perez*, 2020 WL 1546422 (S.D.N.Y. Apr. 1 2020). And that decision was simply wrong. Indeed, the

only court of appeals to consider the question has held that COVID-19 does not authorize disregarding an act of Congress. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). And the vast majority of district courts have concluded the statute must in fact be applied even during the COVID-19 pandemic and even against defendants who claim to have good reasons not to follow it. See, e.g., *United States v. Eberhart*, 2020 WL 1450745 at *2 (N.D. Cal. Mar. 25, 2020); *United States v. Carver*, 2020 WL 1604968 at *1 (E.D. Wash. April, 1, 2020); *United States v. Johnson*, 2020 WL 1663360 at *1 (D. Md. Apr. 3, 2020); *United States v. Perry*, 2020 WL 1676773 at *1 (D. Colo. April 3, 2020); *United States v. Sundblad*, 2020 WL 1650041 at *2 (D.S.C. Apr. 3, 2020); *United States v. Holden*, 2020 WL 1673440 at *9 (D. Or. Apr. 6, 2020); *United States v. Rivers*, 2020 WL 1676798 (D.V.I. Apr. 6, 2020); *United States v. Rivers*, 2020 WL 1676798 at *3 (D.V.I. Apr. 6, 2020); *United States v. Hays*, 2020 WL 1698778 at *1 (S.D. Ala. Apr. 7, 2020); *United States v. Villanueva*, 2020 WL 1703881 at *2, (S.D.N.Y. Apr. 8, 2020); *United States v. Valenta*, 2020 WL 1689786 at *2 (W.D. Pa. Apr. 7, 2020); *United States v. Alam*, 2020 WL 1703881 at *2 (E.D. Mich. Apr. 8, 2020); *United States v. Albertson*, 2020 WL 1815853 at *2 (S.D. Ind. Apr. 8, 2020); *United States v. Epstein*, 2020 WL 1808616 (D.N.J. Apr. 9, 2020) *United States v. Demaria*, 2020 WL 1888910 at *4 (S.D.N.Y. Apr. 16, 2020); *United States v. Hart*, 2020 WL 1989299 at *4 (S.D.N.Y. Apr. 27, 2020); *United States v. Montanez*, 2020 WL 2183093 at *4 (W.D.N.Y. May 5, 2020).

Moreover, the congressional decision to require initial consideration by BOP is entirely sensible. Wholecheese claims that BOP has "predetermined the issue" and that

requiring a request will simply cause him prejudicial delay. ECF No. 38 at 11. Wholecheese provides no support for this claim, which is self-evidently false. On March 26, 2020, the Attorney General directed BOP to maximize the use of home confinement as part of its COVID-19 mitigation strategy. Since that time, BOP has released more than 3,600 inmates: there is no reason to think that BOP is denying such requests arbitrarily. See *Bureau of Prisons: COVID-19 Home Confinement Information and Frequently Asked Questions*, available at https://www.bop.gov/coronavirus/faq.jsp. On the contrary, BOP has access to highly relevant information—such as prison disciplinary history and an inmate's proposed residence—that allow a determination of whether or not home confinement is in fact appropriate, when balanced against the increased risk to the public posed by release. And this is exactly the same sort of assessment that the court would need to make, even though Wholecheese has not provided any of the information to inform the court's analysis. If BOP were to inappropriately and arbitrarily reject Wholecheese's request, it might be appropriate to ask the court for relief. But in light of BOP's recent record of removing inmates from custody when it can do so, there is no basis to conclude that following the procedure that Congress required would be futile.

**3. Wholecheese has not shown that he can be released safely**

Congress has directed courts to look to the Sentencing Commission's policy statements to determine what constitutes "extraordinary and compelling circumstances" justifying compassionate release. The government concedes that the CDC considers diabetics a high-risk group for COVID-19, and that Wholecheese could accordingly be

deemed to be "suffering from a serious physical or medical condition … that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," and that extraordinary circumstances therefore currently exist. U.S.S.G. §1B13.1, application note (1)(A)(ii)(I). But that is not enough to justify release.

Even in the presence of extraordinary and compelling circumstances, the Sentencing Commission requires a finding that the defendant "is not a danger to the safety of any other person or to the community". U.S.S.G. §1B1.13(2). And on this record, there is simply no way to reach that conclusion.

(A defendant seeking a sentence reduction under § 3582(c) generally bears the burden to prove an entitlement to relief. See, e.g., *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014). The court should conclude that Wholecheese likewise bears the burden of proving that he can be released safely. But in any event, the salient factors here are clear enough that the allocation of the burden makes no difference to the ultimate conclusion.)

Wholecheese was convicted of possessing an illegal weapon in close proximity to illegal drugs—conduct that raises serious questions about his potential danger to the community. That concern is exacerbated by his substantial criminal record. At the time of sentencing, Wholecheese had 21 prior criminal convictions, including 3 prior felonies and 6 prior assaults. ECF No. 47 at 16-28. Wholecheese also had a staggering 34 violations of probation and parole. ECF No. 52 at 2. In short, Wholecheese has been consistently

engaging in criminal conduct, since the age of 18, with little in the way of sustained period of law-abiding behavior.

Unsurprisingly, this record placed Wholecheese in Criminal History Category VI. ECF No. 47 at 29. Such offenders are highly likely to return to criminal behavior after release from custody: an empirical study found a recidivism rate of 85.7%. U.S. Sentencing Comm'n, *The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders* at 7 (2017), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170309_Recidivism-CH.pdf.

Wholecheese's only response is to assert that he has written a letter that "reflects somebody who, like many who enter their forties, seems to be finally figuring it out." ECF No. 60 at 31. But while there is some data to support the idea that older criminals are less likely to reoffend, research has also shown that federal offenders like Wholecheese who have a history of violent crime are significantly greater risks for recidivism than others in their age cohort. U.S. Sentencing Comm'n, *Recidivism Among Federal Violent Offenders* at 11-16 (2019), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190124_Recidivism_Violence.pdf. In light of his substantial history of serious criminal conduct, and his repeated violations of court orders, the self-serving statements in Wholecheese's letter should be given very little weight.

On this record, the only way that the court could realistically find Wholecheese a suitable candidate for early release would be if he could identify an unusually stable, safe,

and secure living environment that would somehow mitigate the obvious dangers he poses. But Wholecheese has provide *no* information about where he would live or what he would do if his request were granted: he has not even told the court what state he plans to move to. Without this information, it is difficult to see how he has satisfied the requirements of the policy statement.

**4. The court cannot dictate where a defendant serves a sentence**

Finally, it is worth noting that even if Wholecheese's motion were not procedurally barred, and even if he had in fact shown that he could be released without endangering the public, the relief he is requesting would still be beyond the court's power.

Once a prisoner is ordered to serve a federal sentence, that person is "committed to the custody of the Bureau of Prisons until the expiration of the term imposed" (less earned good time). 18 U.S.C. § 3621(a). During this period of commitment, Congress has provided that BOP "shall designate the place of the prisoner's imprisonment". 18 U.S.C. § 3162(b). This means that a district court "has no jurisdiction to select the place where the sentence will be served. Authority to determine place of confinement resides in the executive branch of government and is delegated to the Bureau of Prisons." *United States v. Dragna*, 746 F.2d 457, 458 (9th Cir. 1984).[*]

The compassionate release statute authorizes a court to do just that—to release a defendant from BOP custody by retroactively shortening a sentence. It does not grant the court additional power to change a defendant's conditions of confinement: regardless of

---

[*] BOP's use of home confinement as part of its mitigation strategy is, of course, an exercise of this authority.

what showing Wholecheese might make, the court has no more authority to order him placed in home confinement than it has to order him moved to a different prison.

**5. If Wholecheese is released, the court should monitor him for at least 14 days**

Should the court grant release, the government requests that it accommodate the need to quarantine the defendant for a period of at least 14 days in order to protect public health, by retaining jurisdiction over the motion for 14 days so that BOP can place the inmate in quarantine. If the defendant has not displayed symptoms or tested positive for COVID-19 for a period of 14 days, then the ordered release can take effect. If the defendant tests positive during the initial 14-day period, the government will notify the Court and seek an extension of the release date until the defendant has displayed no symptoms for a period of 14 days or tested negative.

**CONCLUSION**

Wholecheese's COVID-19 diagnosis renders his release inappropriate. His motion is procedurally barred, and seeks relief that the court has no legal ability to grant, and that would unacceptably endanger the community. As such, his motion should be denied.

RESPECTFULLY SUBMITTED June 2, 2020 at Anchorage, Alaska.

                                        BRYAN SCHRODER
                                        United States Attorney

                                        /s James Klugman
                                        JAMES KLUGMAN
                                        Assistant United States Attorney
                                        United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on June 2, 2020
a true and correct copy of the foregoing
was served electronically on:

Burke Wonnell

/s James Klugman
Office of the U.S. Attorney

U.S. v. Wholecheese
4:16-cr-00008-RRB